UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

| | |
|---|---|
| ELECTRO CYCLE, INC. ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 4:16-CV-95-JHM |
| v. ) | |
| ) | |
| PROJECT INTEGRATION, INC. ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT

Plaintiff Electro Cycle, Inc., for its Complaint against Defendant Project Integration, Inc., states as follows:

### PARTIES, JURISDICTION AND VENUE

1. Plaintiff Electro Cycle, Inc. ("ECI") is a corporation incorporated in Missouri with its principal place of business in St. Louis County, Missouri. ECI is registered to do business in Kentucky and operates a metal processing plant in Madisonville, Hopkins County, Kentucky (the "Plant"), within this District.

2. Defendant Project Integration, Inc. ("PI") is a corporation incorporated in South Carolina with its principal place of business in Spartanburg, South Carolina. PI is registered to do business in Kentucky and maintains a registered agent for service of process in Kentucky: Corporation Services Company, 421 West Main Street, Frankfurt, Kentucky 40601. PI provides services including engineering, procurement, project management, construction oversight, commissioning and start-up.

3. This action arises from representations and services provided by PI to ECI in connection with a construction project at the Plant in Kentucky. PI entered into agreements with ECI to be performed in Kentucky and PI employees performed services at the Plant in Kentucky.

4. The dispute over the representations made and the services performed by PI involves an amount in controversy in excess of $75,000, exclusive of interest and costs. ECI claims damages in this action of over $900,000.

5. This Court has subject matter jurisdiction over this action under 28 U.S.C. §1332 because there is diversity of citizenship between the parties and the amount in controversy is in excess of $75,000, exclusive of interest and costs.

6. Venue lies in this Court under 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to the claim occurred in Madisonville, Kentucky, within this District. In addition, in an agreement between PI and ECI relating to the project at the Plant, both parties agreed that venue for disputes arising out of the agreement would lie in this Court.

7. Personal jurisdiction over PI exists in this Court because PI is registered to do business in Kentucky, entered into an agreement to be performed in Kentucky, the agreement included a provision whereby PI consented and submitted to jurisdiction in this Court, and PI actually performed services in this District related to the claims asserted in this action.

## FACTS COMMON TO ALL COUNTS

8. ECI recycles and processes metal at the Plant. This work includes removal of coatings from metal to be recycled, which is accomplished by processing the metal through a kiln, connected to an afterburner and related ductwork, with the resulting smoke then treated and filtered before discharge through a stack.

9. In 2014, ECI was considering an upgrade to its existing de-coating system at the Plant, which would involve design changes, replacement of several items of equipment throughout the process, and related construction (the "Project").

10. ECI requested the assistance of PI in pursuing the Project. ECI had used PI to provide services on previous occasions.

11. ECI selected PI because PI had represented and held itself out as experienced in the design and installation of projects similar to the Project. ECI relied on PI representations in seeking the assistance of PI and relied on the stated skill and expertise of PI.

12. PI proposed first to do what was called the "Phase I Engineering" on the Project, which involved an on-site evaluation of the existing de-coating systems and equipment, review of system information and engineering reports on the system, preparation of a general scope of work to upgrade the system and equipment, and preparation of a budget of the "total project installed cost" of all items in the scope of work.

13. The budget proposed by PI in the Phase I Engineering was to include a "total installed cost" for all required engineering, all new and upgraded equipment and system components, all shop fabricated items, mechanical and electrical installation work, project management (including oversight of contractors), and system start-up.

14. At the time PI proposed to do the Phase I Engineering, it understood and acknowledged that the objective of ECI and its parent company was to have a project cost figure that could be used for appropriation of funding for the Project.

15. On September 10, 2014, ECI issued to PI a purchase order with accompanying terms and conditions for the Phase I Engineering services for the Project, with a price of $24,950, which ECI paid to PI. PI accepted the purchase order with attached terms and

3

conditions, and it performed services thereunder, making the document the statement of material terms and the Purchase Agreement between the parties for those services (the "Phase I Purchase Agreement"). A copy of the Phase I Purchase Agreement is attached hereto as Exhibit A, and incorporated herein.

16. Pursuant to the terms and conditions in the Phase I Purchase Agreement, PI represented, warranted and agreed to the following:

    A.    all services furnished under the agreement would be in exact conformity with the Purchase Agreement and with any other description supplied by PI, including its description of the required budget and the need to deliver a total installed cost figure.

    B.    all services shall be free from defects in workmanship.

    C.    PI understands the requirements of the Purchase Agreement and that it is experienced and qualified to perform the services required thereby.

    D.    all services will be performed, provided by and supervised by qualified persons who are, or who are under the direction of, qualified professionals licensed to perform such services, in the manner required by the jurisdictions governing the services to be performed.

    E.    PI shall perform all services in accordance with the professional standard of care, skill and diligence which equals or exceeds that which is recognized in the industry for the performance of the types of services addressed, in or subject to, the terms and conditions of the Purchase Agreement, similar in size, location, scope and complexity to the project to which such services related and that it is experienced and qualified to perform all such services.

    F.    PI is solely responsible for all means, methods and techniques in connection with the performance of all services.

    G.    PI shall be responsible to ECI for the acts, errors and omissions of PI's employees and all other persons performing any portion of any services under the direction or control of PI.

    H.  PI shall not employ or engage any person to perform any services who is unfit or not skilled to perform such services.

  17.  Pursuant to the terms and conditions of the Phase I Purchase Agreement, PI agreed to indemnify and hold harmless ECI from any losses or damages incurred by ECI, arising from breach of any of PI's warranties, breach of contract, negligence, defective services or workmanship, or out of any act or omission of PI or its employees.

  18.  PI also agreed in the Phase I Purchase Agreement that if ECI brings suit against PI for breach of the Phase I Purchase Agreement, or to enforce any of its rights thereunder, ECI shall be entitled to collect reasonable attorneys' fees and its costs. ECI is also allowed under the agreement to setoff of any amounts due and owing by ECI against any damages owed by PI to ECI. In addition, PI and ECI agreed to consent to venue and jurisdiction in this Court.

  19.  PI prepared and presented to ECI initial versions of a budget supported by spreadsheets with various cost estimates. After considering requests from ECI, PI prepared and submitted to ECI a final budget for the Project dated January 12, 2015, which represented to ECI a total installed cost of $757,648 (the "Budget"). The Budget was supported by three spreadsheets submitted to ECI, which contained detailed labor time and material cost estimates in the categories of (1) Electrical Equipment & Installation; (2) Mechanical Equipment & Installation; and (3) Engineering and Procurement (the "Spreadsheets"). The Budget is attached hereto as Exhibit B and the Spreadsheets are attached hereto as Exhibit C, with both incorporated herein.

  20.  In each version of a budget prepared by PI and submitted to ECI, PI represented that the pricing stated therein contained a contingency factor of 25% already built in to the prices, and that the pricing would not exceed the total amount stated in the budget. The formulation used by PI was to state: "Pricing is plus 25 percent minus zero." With such

5

representation expressly set forth in the Budget, ECI relied on PI in deciding that the total installed cost of the Project would not exceed $757,648 and that the Project possibly could be completed for up to 25% less than that amount.

21. Based on the representations in the budgets and cost estimates submitted by PI, ECI proceeded in January 2015 to obtain internal approval of the Project from senior management of ECI and its parent company. A decision to proceed with the Project on a labor time and material cost basis was made in reliance on the work of PI and the representations made by PI. A capital appropriation of $750,000 was approved in reliance on the work of PI and the representations made by PI.

22. After management approval of the Project, on January 19, 2015 ECI issued to PI a purchase order with accompanying terms and conditions for engineering and procurement services for the Project with a price of $85,700, the same amount set forth in the Budget for those services. PI accepted the purchase order with attached terms and conditions, and it performed services thereunder, making the document the statement of material terms and the Purchase Agreement between the parties for those services (the "Engineering Purchase Agreement"). A copy of the Engineering Purchase Agreement is attached hereto as Exhibit D, and incorporated herein.

23. Pursuant to the Engineering Purchase Agreement, PI agreed to provide the engineering services set forth in the Budget and the Spreadsheets. PI also agreed to the terms and conditions in the Engineering Purchase Agreement relating to such services.

24. Pursuant to the terms and conditions in the Engineering Purchase Agreement, PI represented, warranted and agreed to the following:

    A.    all services furnished under the agreement would be in exact conformity with the Purchase Agreement and with any other

      description supplied by PI, including the Budget and Spreadsheets.

B.     all services shall be free from defects in workmanship.

C.     PI understands the requirements of the Purchase Agreement and that it is experienced and qualified to perform the services required thereby.

D.     all services will be performed, provided by and supervised by qualified persons who are, or who are under the direction of, qualified professionals licensed to perform such services, in the manner required by the jurisdictions governing the services to be performed.

E.     PI shall perform all services in accordance with the professional standard of care, skill and diligence which equals or exceeds that which is recognized in the industry for the performance of the types of services addressed, in or subject to, the terms and conditions of the Purchase Agreement, similar in size, location, scope and complexity to the project to which such services related and that it is experienced and qualified to perform all such services.

F.     PI is solely responsible for all means, methods and techniques in connection with the performance of all services.

G.     PI shall be responsible to ECI for the acts, errors and omissions of PI's employees and all other persons performing any portion of any services under the direction or control of PI.

H.     PI shall not employ or engage any person to perform any services who is unfit or not skilled to perform such services.

25.     Pursuant to the terms and conditions of the Engineering Purchase Agreement, PI agreed to indemnify and hold harmless ECI from any losses or damages incurred by ECI, arising from breach of any of PI's warranties, breach of contract, negligence, defective services or workmanship, or out of any act or omission of PI or its employees.

26. PI also agreed in the Engineering Purchase Agreement that if ECI brings suit against PI for breach of the Engineering Purchase Agreement, or to enforce any of its rights thereunder, ECI shall be entitled to collect reasonable attorneys' fees and its costs. ECI is also allowed under the agreement to setoff of any amounts due and owing by ECI against any damages owed by PI to ECI. In addition, PI and ECI agreed to consent to venue and jurisdiction in this Court.

27. In addition to the Engineering Purchase Agreement, ECI and PI entered into a purchase agreement for the project management services of installation oversight, commissioning and start-up, as set forth in the Budget. ECI issued to PI on July 2, 2015 a purchase order with accompanying terms and conditions for those services for the Project. PI accepted the purchase order with attached terms and conditions, and it performed services thereunder, making the document the statement of material terms and the Purchase Agreement between the parties for those services (the "Project Management Purchase Agreement"). A copy of the Project Management Purchase Agreement is attached hereto as Exhibit E, and incorporated herein.

28. The terms and conditions attached to the Project Management Purchase Agreement are the same as those attached to the Phase I Purchase Agreement and the Engineering Purchase Agreement. Pursuant to the terms and conditions in the Project Management Purchase Agreement, to which PI agreed, PI made the same representations, warranties and agreements for the services therein as it had made in the Phase I Purchase Agreement and the Engineering Purchase Agreement, as set forth in detail above.

29. In reliance on the representations of PI in the Budget, Spreadsheets, and the Purchase Agreements, particularly the built in 25% contingency on labor time and

material cost estimates, ECI issued purchase orders to the construction contractors on the Project with pricing on a labor time and material cost basis. In issuing those purchase orders, ECI fully expected based on the Budget that such contractors, in the aggregate, would complete the work and provide the materials for a total cost of $757,648 or less.

30. As part of the services and duties to be performed by PI on the Project, PI agreed to track the costs of the Project as they were incurred, as compared to the Budget, and report on them to ECI. PI failed to perform that task, up to and including the period of construction on the Project.

31. At no point up to and including the construction phase of the Project did PI ever inform ECI that the Budget or Spreadsheets, for the work identified therein, were inaccurate or needed to be amended in any way, or that the actual costs of the Project would exceed the total amount set forth as the maximum cost in the Budget.

32. On certain items of work for the Project, ECI requested after the date of the Budget that additional materials be used or work done in the Project, and in those instances the parties handled such change requests from ECI by preparing change order documents that specifically identified the extra cost and work that differed from items in the Budget and Spreadsheets. ECI makes no claims in this action for recovery of any costs associated with those agreed-upon change order requests or documents.

33. After PI performed some of its engineering and procurement work, and after some initial demolition work, construction on the Project occurred in August 2015.

34. Prior to the construction work in August 2015, ECI did not know and could not reasonably know that the ultimate cost of the Project would far exceed the amount of $757,648 that PI had represented would be the maximum cost of the Project

even if the 25% contingency in cost estimates was exhausted, and that such representation was false and erroneous. ECI did not know and could not reasonably know if PI itself was aware or expected, prior to August 2015, that there would be significant cost overruns on the Project.

35. If ECI had been told by PI prior to August 2015 that the Project would incur cost overruns of hundreds of thousands of dollars above the amount in the Budget and Spreadsheets, ECI would not have gone forward with the construction work on the Project, as ECI management had approved the Project with a capital appropriation of $750,000 based on the work and representations of PI.

36. Construction on the Project was completed on or about August 23, 2015.

37. Upon completion of construction on the Project, the total direct costs incurred on the Project could be determined. The total direct costs incurred by ECI for engineering, labor, material, tools, freight, expedite fees and taxes was in excess of $1.7 million, including approximately $70,000 attributable to ECI requested scope changes documented in change orders. The total direct costs incurred by ECI, less the amounts for change orders agreed upon after the Budget, exceeded the maximum amount of costs represented by PI in the Budget and Spreadsheets by approximately $900,000 (the "Cost Overrun").

38. Most of the total direct costs on the Project were incurred during the construction phase of the Project in August 2015, generating the Cost Overrun.

39. PI was careless and grossly underestimated the scope and complexity of the work necessary during the construction phase of the Project within the existing layout and configuration of the Plant and its existing de-coating equipment. That error and/or

omission led PI to prepare erroneous and understated cost estimates in the Budget and Spreadsheets, which were then used to represent to ECI a maximum total installed cost of the Project in the Budget that was relied upon by ECI in proceeding with the Project.

40. PI incorrectly estimated in the Budget and Spreadsheets the needed material costs and labor hours for installation at the Plant. A large portion of the ultimate Cost Overrun arose from significant additional labor and material costs for the electrical and mechanical contractors, which were not estimated properly in the Budget and Spreadsheets. The mechanical contractor exceeded PI's budgeted costs of materials for ductwork and piping and significantly exceeded the PI number of budgeted labor hours for installation work (totaling a cost overrun of about $465,000), and the electrical contractor exceeded PI's budgeted costs of materials for conduit and cable and also exceeded the PI number of budgeted labor hours for installation (totaling a cost overrun of over $250,000). Smaller dollar amounts of estimating errors for labor or material became evident in other areas of the Project after the construction phase.

41. In addition to estimating errors by PI on the labor and material needed for the Project, PI further erred in its estimating work by completely failing to include in the Budget any costs for freight, taxes or expediting fees, which totaled almost $50,000 by the end of the Project, adding to the Cost Overrun after exhaustion of the 25% contingency factor.

42. Other errors or omissions by PI that added to the cost of the Project included errors in design resulting in a need to purchase unbudgeted materials and/or expend unbudgeted resources to correct issues that arose during the construction phase of the Project. An example of this type of error was the erroneous design by PI of an

endplate for the afterburner, requiring additional costs for a new endplate and costs for required new duct work that added to the Cost Overrun after exhaustion of the contingency factor.

43. PI also made errors or omissions that became obvious during the construction phase in the area of improper equipment specification, which again added cost to the Project and ultimately increased the Cost Overrun after exhaustion of the contingency factor. An example of this type of error was the selection by PI of an oxygen sensor with the wrong specifications, which required ECI to return the instrument and procure during construction a new device, necessitating additional labor and electrical costs in connection with switching out the devices.

44. Issues that arose during the construction phase of the Project even resulted in PI changing certain engineering drawings during August 2015 that it had prepared in anticipation of the construction of the Project.

45. During the construction phase of the Project in August 2015, PI had employees on site at the Plant performing engineering services and project management services, who were inexperienced and unsupervised and who, upon information and belief, had not prepared the Budget and Spreadsheets. Such PI employees were not prepared or qualified to address all of the issues that ultimately led to the Cost Overrun.

46. The conduct of PI described above directly and proximately caused ECI to suffer damages and pecuniary losses for direct out-of-pocket costs. The amount of the losses and damages incurred by ECI is the Cost Overrun on the Project, in an amount of approximately $900,000.

47. ECI has also incurred, and will continue to incur, attorney fees and costs to enforce its rights under the Phase I Purchase Agreement, Engineering Purchase Agreement and/or Project Management Purchase Agreement, and it is entitled to recover such fees and costs from PI.

## COUNT I
## NEGLIGENT MISREPRESENTATION

48. ECI incorporates by reference herein all of the foregoing allegations as if stated herein.

49. PI, in the course of PI's business and profession and in transactions in which it had a pecuniary interest, supplied erroneous and false information to ECI for the guidance of ECI in ECI's business transactions. Such information included the information and cost estimates for the Project, including the total installed cost, that are set forth in the documents related to and leading to issuance of the Budget and Spreadsheets.

50. Because of errors and omissions and a failure by PI to exercise reasonable care or competence in obtaining and communicating the information, the information was false and erroneous when communicated, and it remained false and erroneous through the completion of the Project as it was never corrected or altered by PI at any time prior to completion of the Project.

51. The information provided to ECI was intentionally supplied by PI for the guidance of ECI in the business transactions between ECI and PI.

52. ECI justifiably relied on the information provided to it by PI, in deciding to pursue and approve the Project, to issue purchase orders to PI and others in connection with the Project, and to continue the Project through to its completion.

53. As a result of such justifiable reliance on the information from PI, ECI has suffered a pecuniary loss caused by PI, for which PI is liable. Such pecuniary loss includes the amount of the Cost Overrun on the Project incurred by ECI and the attorney fees and costs incurred by ECI in enforcing ECI's rights.

## COUNT II
## NEGLIGENCE

54. ECI incorporates by reference herein all of the foregoing allegations as if stated herein.

55. PI is an engineering firm that undertook responsibilities to ECI in the services required by the Phase I Agreement, in preparing the cost estimates that resulted in the total installed cost figures in the Budget and Spreadsheets, in providing engineering services pursuant to the Engineering Purchase Agreement, and in providing project management services in connection with the Project Management Purchase Agreement, through the completion of the Project.

56. In undertaking those responsibilities and performing services in connection with the Project, PI owed to ECI a duty of reasonable care, skill and diligence equal to or exceeding that exercised and practiced by professional engineers performing the same or similar types of services provided by PI in connection with the Project and under the same or similar circumstances. More specifically, PI had a duty to ECI to furnish a budget for a total installed cost and cost estimates for the Project with a reasonable degree of technical skill and ability that considered the scope and complexity of the Project at the Plant, and a duty to perform the engineering and project management services on the Project carefully and in the manner of other engineers who hold themselves out as having particular skill and ability.

57. PI breached the aforesaid duties to ECI, by negligently and carelessly preparing the cost estimates and total installed cost that resulted in the Budget and Spreadsheets and in making errors and omissions while providing engineering and project management services in connection with the Project, through the completion of the Project.

58. It was reasonably foreseeable that ECI would be damaged by PI's breaches of duties.

59. PI's breaches of duties to ECI and its negligence proximately caused ECI to suffer damages and losses. Such damages and losses include the amount of the Cost Overrun on the Project incurred by ECI and the attorney fees and costs incurred by ECI in enforcing ECI's rights.

## COUNT III
## BREACH OF CONTRACT

60. ECI incorporates by reference herein all of the foregoing allegations as if stated herein.

61. PI entered into binding agreements with ECI, including the Phase I Purchase Agreement, Engineering Purchase Agreement and the Project Management Purchase Agreement. Pursuant to such agreements, PI made representations, warranties and promises as set forth above and in the attached Exhibits.

62. PI has failed to comply with the contracts and has breached the promises, representations and warranties made to ECI, including in the following particulars: (1) PI has not performed all services in exact conformity with the agreements and with descriptions supplied to ECI by PI, including the promise to deliver a total installed cost of the Project and in the Budget and Spreadsheets; (2) PI has not provided services free

from defects in workmanship; (3) PI did not understand all the requirements of the agreements, including the promise to deliver a total installed cost of the Project and descriptions in the Budget and Spreadsheets, and did not perform the services required thereby; (4) PI did not perform all services by qualified persons who were supervised by or under the direction of qualified professionals; (5) PI did not perform all services in accordance with the professional standard of care, skill and diligence which equals or exceeds that which is recognized in the industry for the performance of the types of services addressed, in or subject to, the terms and conditions of the Purchase Agreements, similar in size, location, scope and complexity to the Project; (6) PI did not take responsibility for all the means, methods and techniques in connection with the performance of all services, particularly in tracking costs on the Project and reporting on them to ECI; and (7) PI employed employees who committed errors and omissions in performing services for ECI, and who were not sufficiently skilled to perform the services.

63. ECI has duly performed all obligations on its part to be performed or its further performance has been excused by the breaches of PI.

64. The breaches of promises, representations and warranties in contracts by PI have caused damages and losses to ECI. Such damages and losses include the amount of the Cost Overrun on the Project incurred by ECI and the attorney fees and costs incurred by ECI in enforcing ECI's rights. ECI is specifically entitled under its agreements to collect reasonable attorney's fees incurred in bringing this action.

## COUNT IV
## INDEMNITY

65. ECI incorporates by reference herein all of the foregoing allegations as if stated herein.

66. Pursuant to the terms and conditions of the Phase I Purchase Agreement, Engineering Purchase Agreement and Project Management Purchase Agreement, PI agreed to indemnify and hold harmless ECI from any losses or damages incurred by ECI, arising from breach of any of PI's warranties, breach of contract, negligence, defective services or workmanship, or out of any act or omission of PI or its employees.

67. As set forth in Counts I-III above, PI has breached warranties, breached contracts, committed negligence and provided defective services or workmanship. ECI has suffered losses and damages caused by such acts or omissions by PI.

68. ECI is entitled to indemnification from PI for ECI's losses and damages caused by the acts or omissions by PI. Such damages and losses include the amount of the Cost Overrun on the Project incurred by ECI and the attorney fees and costs incurred by ECI in enforcing ECI's rights. ECI is specifically entitled under its agreements to collect reasonable attorney's fees incurred in bringing this action.

WHEREFORE, Plaintiff ECI respectfully demands as follows:

A. Judgment against PI for the damages sustained by ECI as described herein;

B. Its costs and attorney fees incurred herein;

C. Trial by jury on all issues so triable; and

D. All other relief to which it is entitled.

July 31, 2016                                             Respectfully submitted,

                                                          By:   /s/ Joseph L. Hardesty
                                                                 Joseph L. Hardesty
                                                                 Kentucky Bar No. 28662
                                                                 jhardesty@stites.com
                                                                 STITES & HARBISON, PLLC
                                                                 400 West Market Street, Suite 1800
                                                                 Louisville, Kentucky 40202-3352
                                                                P:  (502) 587-3400
                                                                F:  (502) 587-6391
                                                                *Counsel for Electro Cycle, Inc.*